Good morning, everyone. Our first case this morning is Kreg Therapeutics v. VitalGo, Inc. Mr. Lucas? May it please the Court, Counsel? My name is James Lucas. I am Counsel for the appellant, VitalGo, Inc. I'm here today to talk about numerous errors we believe were made by the District Court. I'd like to start with probably one of the most important, because I think it may mood a lot of the other errors, and that is the fact the District Court erroneously interpreted and expressed an unambiguous contract term, that being the global written notice or communication provision of the agreement. And that is, for the Court's convenience, the agreement is at docket 17-1. And on the record, Paragraph 23 is very clear and expressed, and it says, Any notice, meaning all notices or communications required or permitted hereunder, shall be in writing and shall be sent by registered mail. Counsel, how do you handle the New York cases that say when there's actual notice and no prejudice in writing requirements need not be strictly enforced? Well, first, I would say that none of those arguments were made at the lower court, so they've been weighed. Secondly, what it says is those cases say actual notice has to be conceded. Throughout the proceedings, the appellant has disputed that it ever received actual notice, written or otherwise. Well, I thought that the facts that you're stuck with, because of the district court's ruling on the Local Rule 56.1 judgment, kind of forced you to concede there was actual notice because of the conversation between the two principles. You see, I would disagree with that. If you look at the record respectfully, there's a large portion of evidence discussing, for example, in the initial pleadings of the appellee, the appellee never stated on record in a reply to the appellant's counterclaims, there are no commitments. But that's not evidence. Judge Barrett's question went to the evidence. The pleadings in the case are not evidence. Well, there's also the, let's talk about, generally, the pleadings were part of the summary judgment record. But they're not evidence. You cannot take them as evidence. Understood. There's also the e-mails, the June e-mails, 2011 e-mails. And what's really important about those e-mails is those e-mails are, the appellee said that those e-mails were the only evidence on the record of a commitment. Well, the district judge found that that one June e-mail was not a commitment with respect to the additional territories. And so one of our arguments is it can't be a commitment with respect to the original territories for the same reason. That e-mail covers both. That's a dispute that shows there's a general dispute at the very least that there was actual evidence. But the district court said, did it not, that you were stuck because of your failure to respond and follow Local Rule 56.1, that you were stuck with that as a fact that was taken to be undisputed, that there was a conversation between the principals, and that Craig had said that it would agree to commit to a purchase of the necessary amount of beds? I believe it did say that. We also believe that that holding was... So you believe that that's wrong, right? That was also erroneous. You have your separate argument that you shouldn't have been penalized under 56.1. Correct. But as it stands, the record evidence as it stands, unless we think the district judge abused his discretion in saying that you were stuck with that, when the district court ruled on the summary judgment motion, it accepted as true that there had been a verbal agreement to fulfill the commitment to purchase the necessary number of beds. Right. But to be clear, I want to make sure we're clear, our position, the appellant's position is that the court shouldn't even... It's a separate issue, I agree, but that the court should have at the very least found that there was a genuine issue that the commitments were never made. Because their emails and other evidence before the court showed that that commitment, that alleged commitment in December was never made. There's one email you're talking about, the June 6, 2011. What's the other evidence that you're relying on that the court on its own should have figured out, which is a separate problem for you? So I agree with you, there is the June 6 email, and that's docket 7922. Yes, I have that. Right. And we can go through that. That obviously refers to both agreements. That's, you know, it says willing, it shows that there was no agreement. There is a, before the court summary judgment, docket 88 is plaintiff, excuse me, appellee's statement of uncontested facts and statement of additional material facts, where the appellee references, and I'm pointing to docket, it looks like 88 at response 25. And the request was, according to Craig, the total bids Craig committed to purchase are set forth in emails sent from Craig Krulos to Paz on June 13th and June 17th. And then the response, the response references those emails, and then also references the prior pleadings, which is why I mentioned the prior pleadings. That was the only reason. The prior pleadings in the case show their only commitments. So that's one piece of evidence. These are emails from 2011, correct? That's correct. You did not attach those as required to the statement of uncontested facts that you're talking about, and under the rules that's required. And also they came after the breach. They came after the breach. They were cited, to be clear, they were cited by appellee in response to our statement of facts. They were before, and so were the exhibits. Excuse me, at least the exhibits were cited too by appellee. The appellee did not rely on these emails for establishing the commitment before the breach. So how is it that Judge Dow, when you didn't respond, is supposed to dig through the record and figure that out on his own, if they even stand for what you're saying? Well, to be clear, they did come after the breach. Appellee did rely on one of those emails, the June 6th email, 2011. But not for the proposition that you're arguing. For the proposition that it had made commitments with respect to the additional territories. And so our related position is, well, the judge should have taken that email and also found that at the very least it created a genuine issue as to whether it made commitments for the original territory. How is it that that burden should fall on the district court when you didn't respond and didn't cite any evidence to refute the oral agreement that the appellee identified? Well, it was clearly before the court. Remember, there's cross motions on the entire claim. And he had to look at the evidence. There are cross motions, but you didn't bring this forth. You did file your original motion. You didn't respond to the appellee's motion. But you didn't bring this forth in your argument to the court in your original motion. So again, how is it that the judge is supposed to dig through the record? To be clear, I think the appellant did argue that that June email showed there were no commitments whatsoever. Because what happened? For the additional territories. I think for both. It's just that the judge only used that incorrectly for the additional territories. And that what it does, if you could look at the email, it shows very clearly that it talks about both agreements. It cites to both, to the original agreement, the original territories. And it clearly is still talking about willing to commit in the future. But there's a but. There's lots of buts showing that this alleged oral testimony was not accurate, was not credible. And to be clear, that's also cooperated by all of the TRO evidence, multiple affidavits. But the TRO evidence, again, wasn't before Judge Dowd with the summary judgment. Understood. But Judge Dowd was aware of it, cited to it across the board. But counsel, so these strike me as arguments you should have made to Judge Dowd. This whole case strikes me as whatever the prior counsel, that if I had to go start out with, then you're trying to get out from under. Well, I disagree. I mean, I think that the district court also made errors. Because remember, at summary judgment cross motions, at least on their motion, you're supposed to look at the evidence in a light most favorable to appellant. And I think the email, the pleadings, you asked about, there's a new derogatory response at Docket 74. All show that, at the very least, there's a genuine issue as to whether commitments were made for the original territories. What really happened here is the appellee, throughout the case, said there were no commitments, submitted affidavits, sworn affidavits, and then was deposed, and then changed his tune and said, oh yeah, I orally committed in December. You're relying on affidavits that were submitted in connection with the TRO. Those affidavits were not before Judge Dowd at the summary judgment. Are you saying that district courts that receive hundreds of cases and hundreds of motions, that it's up to them to go back and dig through what's already on the docket? That's not what our case says. I'm not saying that. How is it, then, that Judge Dowd should have considered what was submitted in connection with the TRO at the summary judgment stage that you didn't respond to? I want to make sure I get your question right. We know he did look at the TRO record because he cites to it in the summary judgment opinion. I'm not saying he had to comb through the entire TRO record. Then how is it that he should have identified these prior affidavits and then figured out your argument with respect to them? That's not what the burden is on judges. They were cited to at summary judgment also. They were by a colleague. They were part of the record. You did not respond with these arguments at the summary judgment. I agree with you, but the district court is required to look at all of the evidence at summary judgment and make that determination as to whether it's a genuine issue or whether on both respective summary judgments. On that issue, one of our arguments is that he did not do that. In fact, what I think the June 6th email that he relied on for the additional territory shows, that there's no genuine issue, that no commitment was made on both the original and the additional territories. The alternative argument, at the very least, it shows that there was a genuine issue, that no commitment was made with respect to the original. Did I answer your question? Yes. I did want to get back to the one issue about the contract, because we have a global written communication provision, and it says it applies to all of, again, that's at 17.1, at paragraph 23. It applies to all writings, all notices or communications, any notice, all notices or communications. And the district court found that it did not apply to the commitments requirement. We think that's a clear error of law. The only evidence of record, excuse me, the only law of record is directly on point. It's a district court case from the 3rd District of New York applying New York law. Every argument made by the appellee and every basis made by the district judge was rejected by P&E Props 713F sub 2nd, 262. The position of the appellant is that it never gets to oral commitments. This case that the commitment requirement requires that the notice or communication be in writing. There is no dispute on the record that there was no written communication with respect to the original territories. The district court has already determined that the additional territories, the alleged written communication that you e-mailed didn't apply for the additional territories. That ruling has not been appealed. And the position of the appellant is that this court should reverse and find judgment in appellant's favor. It's a clear, express, unambiguous contract term. It's an issue of law, and that's our position on that. It kind of renders moot a lot of the other errors that an appellant raises, but I will get into those too. So then there's another issue with respect to Rule 56 and the way the district court applied Rule 56 that we think was erroneous  and that is both parties at the initial summary judgment, we call it the first summary judgment, cross-moved for summary judgment on the entire claim of appellee. And therefore under Rule 56 law, the burdens that apply to it, it was error for the court to eventually say it had made Rule 56G findings in its first summary judgment opinion. The law is very clear that if appellee moved for summary judgment on its entire claim, it had to meet its burden of production on every one of the four elements. The district court in that first summary judgment opinion was very clear. It raised no factual evidence and didn't meet its burden of production with respect to damages. Our position is that the court should have, well to be clear, the court did deny the summary judgment of appellee. And therefore the burden never switched to appellant to even contest any element because they already found with respect to, remember just with respect to appellee's summary judgment, it had never, the burden never switched. So it was improper to later on make Rule 56G, alleged Rule 56G findings. Well the judge specifically held that there was no dispute of material fact on the question of breach. The only dispute of fact that remained after the summary judgment ruling was on the question of damages. And that's the Rule 56G holding. And to be clear, it's not findings. The judge doesn't make findings of fact at summary judgment. The judge enters a ruling under 56G, which he did after the summary judgment motion was decided after a status conference. He made clear that those matters, the questions of contract breach, were undisputed. That there was no dispute of material fact and that that ruling would stand and that the only question that remained for potential trial was the question of damages. Right. Appellant believes that was clear error because as you recall, the district court denied appellee's summary judgment motion in the first summary judgment. And it was both parties, but most relevant. Appellee had moved on the entire claim. And so therefore, appellee had to meet its burden on each element of the claim such that the burden never switched over to appellant to rebut that. If Vital Go had, I mean if Craig, sorry, had moved for summary judgment, partial summary judgment only with respect to liability, you're saying that then, oh, you would say it was fine. 100%. So it's that it went for more, that you weren't obliged to respond at all, and that's how you get out from underneath your failure to make findings. Correct. And I'm not correct. I apologize for cutting you off. No, correct, because the laws, if you read Rule 56 in the advisory committee notes, it's very clear that if you move on an entire claim, the other side only needs to show you can't raise, you can't win on one element. But isn't this exactly what 56G is made for? 56G does not apply when summary judgment is granted. 56G applies when summary judgment is not granted, but there are certain elements that the judge can enter the ruling on that there's no question of that. Right. It's precisely the opposite situation of what you're saying. Right, but to be clear, there's two responses to that. First is it depends on what you move on. They've moved on everything. And they did move on everything, and so therefore they could not get 56G findings on just three of those elements. And remember, there's no, the court also found that. That's precisely what Rule 56G is designed for. If they can't survive, if summary judgment is not appropriate, then the court can enter a 56G ruling with respect to other elements. That's precisely what it's made for. It's not appropriate if summary judgment can be granted. I respectfully disagree because it does matter that they moved on the entire claim and that the judge denied their motion on the entire claim. And that it goes to the burdens. And remember, another point is the district court found that there was no evidence of damages, so they had not met their burden on their entire claim. So it even switched over to the appellant to rebut any of their burden on the entire claim. So I disagree. And you're going to hear that there's, in that argument, the burden of production was never addressed by appellate. Another point is, clearly there's an issue here because... Well, they didn't have to address the burden of production below because you didn't respond. No. The court, excuse me, the appellant did respond, but the court is required to assess that. It can't just grant summary judgment. Well, that's exactly what the district court did. In a thorough opinion, he addressed each of the elements in the breach of contract claim and entered his ruling on three of the four elements and found as to damages that there wasn't enough at that time. But they could develop that through discovery. But at that time, I agree, there was no evidence of damages. And because they had moved on the entire claim, 56G was not appropriate. What are you relying on for that? I'm relying on, for example, Hotel 71, 770 F3rd 593. I'm also relying on... Actually, the Rules 56 Summary Judgment Advisory Committee notes are very helpful, where they say, a party who does not have the trial burden of production may rely on a showing that a party who does not have the trial burden cannot produce admissible evidence to carry its burden as to the fact. And then note to Subdivision G. I'm just going to read from this. It becomes relevant only after the court has applied the summary judgment standard carried forward in Subdivision A to each claim, defense, or part of a claim or defense identified by the motion. Once that duty is discharged, the court may decide whether to apply the summary judgment standard to dispose of a material fact that is not generally in dispute. The court must take care that this determination does not interfere with a party's ability to accept a fact for purposes of the motion only. I think that's pretty clear that because they moved on an entire claim that he was not allowed to enter 56 G findings. That was error. I think it's more the other way, counsel. I think it's clearer the other way. I mean, it says, you know, carried forward in Subdivision A, each claim, defense, or part of a claim or defense identified by the motion. And it explicitly contemplates, as does the rule itself, the court's ability to find certain facts established even if it denies the motion. I don't agree with that. I read it as saying, and I think the case law, Hotel 71, makes clear that, and I'll read from that, the party suing the motion must make an initial showing that the agreed-upon facts support a judgment in its favor. This is from, obviously, this court's Hotel 71 case at 601. But it can't be that you could only use 56 G when the agreed-upon facts would support a judgment in its favor on all of the elements, because then you would grant summary judgment. There would be no use for 56 G. The point is you have to raise, you have to at least offer evidence on all of the elements of the claim before you can use 56 G. Another point about the error is that the district court never entered 56 G findings, even if this court found that they were appropriate. The law is pretty clear that he has to actually enter them in a written opinion or order, and he never did that. So that's another error, and that obviously is compounded by the fact that in the second summary judgment... So if you had shown up, and I know it wasn't you, but if counsel for your client had shown up at the April 18, 2013 hearing, were judged out on the record, specifically agreed that he was going to make Rule 56 G findings, would that satisfy the requirement in your mind? No, because I think it's still just an oral recitation. So the oral finding of Rule 56 G wouldn't be sufficient? I don't think so, because I think it's even in the rule. I think it says it has to be a written finding. But the oral finding that incorporated his specific findings in the written summary judgment, that wouldn't be enough? Which you referred back to in a subsequent opinion. Well, I think at that point it's way too late. No, I don't think just saying, oh, I made 56 G findings at a status hearing, in my earlier opinion, is not enough. But if you had been at the status hearing, then you would have known that. Part of the problem is that counsel didn't show up. I agree with that point. I agree with the fact that the counsel didn't show up. I don't know what counsel would have done at that point, but I do agree. The counsel would have been on clear notice, and if he had wanted to object to the 56 G aspect at that point, he could have. There's a lot counsel could have done, based on the arguments you're making now, if he had shown up at that hearing. He could have gotten the transcript, too, after the fact, or the new counsel could have gotten the transcript, which they didn't do. I agree with those things could have happened. I agree with that, but I don't think that changes the fact that as a matter of law, he shouldn't have entered these purported 56 G findings. They weren't entered appropriately. And then I think he compounds the issue in the second summary judgment by saying that the first three elements were established for the case. And I think that's another clear error that needs to be reversed, and not allowing the appellant to rebut those elements. The issue there is that the law is clear under Rule 56 that facts are only admitted for purposes of the specific summary judgment. And if his 56 G application post hoc is wrong, then that's another error that he did not receive evidence in the second summary judgment. Thank you. Finally, I just want to finish on this. There's another error here. It's the 54 C application. The district court said at the first summary judgment that appellee did not present any facts supporting damages and failed to establish damages element. But that the Rule 54 C law allows the appellee to proceed. We think that's clear error also. It relates to the argument that what really should have happened is because the appellee moved on the entire claim, by finding that there was no evidence of damages, the district court should have either granted summary judgment in appellant's favor because it couldn't meet one of the elements of the claim, or at the very least find there was a genuine issue as to whether there were any damages. And he did find that. The actual argument is that he used 54 C and used it incorrectly. And what should have really happened is because he found that there was no evidence of damages, he actually should have found summary judgment in appellant's favor because he necessarily found that appellee could not meet its burden of production for the entire claim. It couldn't show the element of damages. And we think that's a clear error. And then relying on 54 C to allow the... But how is it that if you don't meet your burden on summary judgment that the court should actually grant it against you rather than just denying your motion? Well, it did deny the motion. But remember the other side, appellant filed a cross motion. Did you move for summary judgment on damages? We moved for summary judgment on the entire claim. Did you address damages specifically in your summary judgment, your first summary judgment? I'm not sure if damages were specifically addressed. I want to say not in as much detail as now, yes. I don't think damages were addressed in your first motion for summary judgment. Nor were the facts supporting your motion for summary judgment. So how is it the court could grant a summary judgment in your favor when you didn't move on that element? We moved on the entire claim and all we need to... I said at the very least, it goes to which had the issue, and I agree with you, that was made. But by saying, by affirmably saying no factual evidence was presented supporting this element, and we had moved on the entire claim, it appears... But you have to address, if you're moving on the entire claim, you still have to address the specific elements that you're moving on. That's not for the court to figure out. But if it's cross motions and the appellee doesn't, in response to the motion, offers no evidence of damages, how does the judge not find that summary judgment should be granted in appellant's favor? A judge is not directed to grant a summary judgment against the moving party. You deny it if the party doesn't meet its burden. Okay, but my point is there was a cross motion. And my point is you didn't move on the damages aspect in the cross motion, and as Judge Barrett pointed out, you didn't support it with facts. Okay, but taking that... I see my time's up, but I think that supports the whole... It goes back to the 56 Act issue and the burdens on the entire claim. I think that supports that. I guess my time is up. Any further questions? Thank you. Thank you, Your Honor. Mr. Spangola? Good morning. May it please the Court. With respect to the trial, Judge Dow's finding that Craig suffered lost asset damages in the amount of $642,610 plus prejudgment interest under the New York statute is fully supported by the trial evidence and reflects no clear error. I'd like to address just a few points. The first is with respect to the element of harm, Judge Dow concluded that Craig was deprived of an income-producing asset, and specifically that was the right to build a specific business segment and generate a recurring revenue stream. With respect to recoverability or foreseeability, there was substantial evidence and certainly no clear error to support the finding that at the inception of their agreement, both Vitalgo and Craig foresaw Vitalgo's potential liability for lost asset damages in the event of a breach. In calculating the lost asset damages, Judge Dow followed the Second Circuit's ruling in Schoenfeld, which permits a party who's been deprived of an income-producing asset to pursue a lost asset theory of damages. Judge Dow correctly measured the lost asset damages as the fair market value of the agreement. At the time of Vitalgo's breach, what that means is he analyzed what the purchase price would be that a hypothetical buyer and a seller would agree on. And to determine the fair market value, Judge Dow correctly looked to the discounted value of Craig's projected future earnings from the total lift bets. As the finder of fact, he was thorough and considered in calculating the damages awarded and reaching a number that was considerably less than Craig's damages expert, Mr. Bradshaw, but more than the nominal amount offered by Vitalgo and its expert, Mr. Gottbaut, at trial. The court understood clearly from the opinion the court understood and accepted Mr. Bradshaw's future earnings model and even tweaked some of the inputs to make them even more conservative than Mr. Bradshaw had set forth. Contained in that model was two years of pre-breach data from Craig Therapeutics, giving Judge Dow a greater level of comfort with the damages calculation. Counsel, let me ask you about this in-writing requirement. Why didn't it apply here, this global in-writing requirement for notices and communications? If I could, Judge Barrett, we've divided our time. And Ms. Siegel, my partner, is going to be addressing if that would be okay with the court. Okay, my apologies. In addition to analyzing Judge Bradshaw's inputs, making them more conservative, taking into account the two years of pre-breach data, he went further than that, and so did Craig's expert, Mr. Bradshaw. And there's an agreement called RecoverCare, which you'll recall is a multimillion-dollar deal for nationwide exclusivity, exclusive distribution rights, that motivated, in our view, motivated Vitalgo's what we call opportunistic or strategic breach with Craig. And Judge Dow looked to the RecoverCare agreement, and he used that as sort of a reasonableness check on Mr. Bradshaw's calculations and on Judge Dow's modification of those calculations. And he used it as a reasonableness check to show that the total distribution rights at the time of the breach had significant value. And he also used it to give him greater comfort regarding the logic that Mr. Bradshaw used in his lost revenue projections. Ultimately, the court arrived at the price that the agreement would have changed hands between the seller and the buyer with the requisite level of certainty. And again, while those damages are lower than Craig sought, Craig appreciates that Judge Dow's rulings in this regard are not clear error, and they're not clear error in either Vitalgo's favor or in Craig's favor. And those findings should be affirmed. I'd like to touch on just one additional point since my opposing counsel didn't address anything in trial. It sounds like Judge Barrett would like to ask some questions about some of the other issues. So I'd like to just finish then with a comment on the discount rate, and that is that the methodology Judge Dow used to calculate the discount rate, whether it's reviewed under a clear error standard or an abusive discretion standard, should be affirmed as well. Mr. Bradshaw explained how he calculated and utilized Craig's weighted average cost of capital in determining a discount rate, and he explained clearly his rationale and his methodology. The discount rate used was 10.0%, and it was based on Craig Therapeutics' overall weighted average cost of capital, which, as we know, is commonly used as a discount rate in finance, in accounting. And a further important point to note, and it was important to Judge Dow, is that even looking at Vitalgo's experts' proposed discount rate, once Mr. Gottbaud's proposed discount rate was adjusted to eliminate a 6.4% small-stock risk premium and a 5% company-specific risk premium, both of which were based on incorrect assumptions about the identity of the hypothetical buyer. Once those were moved, it was clear to Judge Dow that Mr. Gottbaud's proposed discount rate actually approximated. And that would be the difference between a standalone distributor and a distributor with a broader product portfolio, essentially. Absolutely, Judge Sykes. What Mr. Bradshaw assumed was that it would be a company like Craig Therapeutics or a company like RecoverCare with other segments of business that would buy this particular segment, and it would not be some startup business who had no other synergies available. And based on that, Judge Dow backed out those additional risk premiums, and the experts really had discounted the 10.08%. The experts really were in a line on that discount rate. If the Court doesn't have any other questions on the trial damages, I'll sit down and let Ms. Siegel address the other issues. Thank you very much. Thank you. Good morning, and may it please the Court. On virtually every issue that Vital Go raises in its appeal, the prevailing theme is that it's seeking to be excused from the consequences of its own actions before the lawsuit and throughout the lawsuit. And that theme comes up again and again. And jumping to your question on the issue that Vital Go has raised concerning the written notices and communication requirement, first, as this Court noted earlier this morning, even were Paragraph 23 to apply, New York law is clear that strict compliance is not required as long as notice was undisputedly received, which here, according to the Rule 56.1 summary judgment record, which Vital Go has to live by, it was, and also that there was no prejudice. And here the only prejudice that Vital Go has identified is that, unfortunately for Vital Go, it got a bad result in this lawsuit. There was a judgment entered against it for correct therapeutics damages. But that's not the sort of prejudice that the law discusses. Prejudice might be, for example, that oral notice was given to a low-level employee who didn't really understand or communicate the message received, and therefore the party receiving the notice didn't get a fair chance to recognize and respond. But that wasn't the case here. The record provides that, as this Court noted, the communication was between the two principals for the company. So even if Paragraph 23 were to apply, there still would be no reversible error here. But also Paragraph 23 does not apply. The District Court was correct in analyzing the agreement, noting that this provision requires undefined notices and communications to be sent by registered mail return receipt requested to very specific business addresses. And it would be illogical to assume that every single communication under the contract, things like ordering parts or ordering more beds or committing to order more beds, had to be sent in this manner. And in fact, the summary judgment record was clear numerous times that that's not actually how the parties communicated. There's numerous communications by email, by regular mail. FIDOGO ignores that in its appeal. It completely ignores the registered mail component of Paragraph 23. That would only come into effect if the provision is ambiguous, though, correct? Correct, correct. And I believe that the District Court's initial summary judgment opinion, Docket 93, there's language in the opinion to the effect of the agreement is less than ideally drafted, something along those lines. And perhaps there is some ambiguity in the agreement as to the extent of the circumstances in which Paragraph 23 could apply. As the District Court noted, notices and communications are undefined. There's numerous other contractual provisions where notice in writing or communication in writing is specifically required, but not in Paragraph 1B2, which talks about Craig's obligation to quote, agree to commit to future purchases in order to... What are communications, then? So the agreement uses the word notice in several places, so it's clear what notices would be, but what are communications? What else would they have been doing when they verbally discussed this agreement besides communicating? That's a good point, Judge. I think the answer is the agreement, as the District Court noted, is less than ideal. It truly is unclear what the parties meant in Paragraph 23, other than the fact that that provision talks about those communications being sent by registered mail, return receipt requested to these very specified addresses, indicates that it's the type of provision you see in contracts that go to extremely important or rare communications, not routine communications like, I'm going to agree to commit to a certain number of beds going forward. So I think there arguably is some ambiguity in the agreement, but the District Court correctly cited New York law saying that when there's an agreement between two sophisticated parties, the court's not going to imply a requirement in there that the parties could have expressly provided for and didn't. Was there any evidence in the record, Ms. Siegel, of any communications being sent to this address? I don't know if there was, but there was substantial evidence in the record of the parties communicating other ways that wouldn't have complied with Paragraph 23. Again, orders for parts, complaints from Craig to Vitalgo that a bed is broken and needs to be fixed. For example, the June 6, 2011 email that we'll get to later where the parties are arguing about what their rights are under the agreement. There were a lot of consequential communications that were not sent via registered mail. And I think, if nothing else, when you think about the registered mail component of Paragraph 23, Vitalgo's argument falls apart. Purchase orders were sent how? I believe they were sent via email, via regular mail. I think the record reflects that the parties had a relatively casual way of dealing with one another during the time period in which they were performing. And I don't believe that Vitalgo, in their papers before this court, has identified any other communication that actually was sent via registered mail. And even if there are one or two, it certainly wasn't exhausted. The parties did not behave as though they believed Paragraph 23 governed every communication between them as they performed under this agreement. And that would be a commercially unreasonable interpretation to read the term communication that broadly. That's not how business is done. Agreed. Agreed. Yes. So the term can't be read literally. Agreed, Your Honor. And I think that's what the district court was getting at when it declined to interpret Paragraph 23 to apply to the agreements to commit  And I just want to address briefly, Your Honor, that the P&E properties case that Vitalgo relies on, putting aside the fact that that case came down before the other New York cases cited in our brief that talk about strict construction or strict compliance not being required, that case is inapplicable in any event. First of all, the written notice provision in the P&E contract did not require the written communications to be sent by registered mail or impose any other onerous requirements other than the communication be in writing. So it would be more reasonable to interpret the written notice provision in that case to be more globally applied. It would be, to your point, commercially reasonable to interpret the P&E written notice provision that way. And then secondly, in that case, there would have been substantial prejudice at play if the court had decided that the $1.9 million in quote-unquote salary continuation payments had to be paid despite a lack of any written record authorizing those payments. In that case, there was a gentleman, Mr. Richard Bernstein, he was a controlling shareholder and director of two companies, one of which he sold in a merger transaction to a third company called UNFI. And what he tried to do within a day or two of the merger was orally authorize by getting permission from himself to make approximately $1.7 or $1.8 million worth of payments to himself and other employees of the company that he was selling. And so I think underlying the court's decision in that case is that that would really just be a very unfair result for him to be permitted to do that within 24 hours of selling that company to someone else. And there's certainly no prejudice of that sort or anything close to it going on in this case. So even if this court were disinclined to affirm the ruling on the basis of there being undisputed notice and no prejudice, the P&E properties case certainly would not be a ground on which to find that the district court erred on this point. Going backwards to some of the other errors that VitalGo argues occurred in this case, and again just touching again on the theme of VitalGo trying to escape the consequences of its own decisions, the district court also acted well within its discretion in applying Local Rule 56.1 and finding it undisputed that Craig Therapeutics met its agreement to commit with respect to the original territories based upon the undisputed oral conversation between the parties' principals in December 2010. As I think this court alluded to earlier, the law of the circuit is very clear that district courts have absolute discretion to enforce strict compliance with Local Rule 56.1. Absolute might be putting it a little strongly. Something a little softer than that. Broad discretion. Wide discretion. It's not unreviewable. I apologize. Wide discretion, certainly. And also that a party, the law is clear, and the district court cited cases saying that a party who fails to comply with those local rules, quote-unquote, must suffer the consequences. Doesn't the record also make clear here that Judge Dow had his courtroom deputy or somebody in chambers reach out to the defendant on several occasions trying to get them to file the 56.1, and they still didn't? It does, yes. And I think it's also relevant that more than a year elapsed from the conclusion of the party's summary judgment briefing to the district court's summary judgment opinion. So not only did the district court make several attempts to try, you know, to offer for VitalGo to come into compliance with the local rule, it wasn't a quick ruling. Many months elapsed in which VitalGo, whether through new counsel or, you know, could have tried to cure the consequences of its actions and at least put something on file that would have prevented the outcome that occurred. It wasn't super clear to me what exactly happened. The judge said that there was an effort to tender but not file and serve. And I wasn't real clear about what that entailed. It had something to do with a practice in the district court about providing a judge copy of pleadings? I believe what happened is that VitalGo's counsel made an argument that somehow it had a response to the statement of facts out there, that maybe it was somehow tendered or someone received it. But I agree, it was less than clear and certainly it was never placed on the ECF record and there was no, you know, VitalGo never established that somehow it was served but there was a hyper-technical error or anything like that. And VitalGo doesn't cite any cases in its appellate brief, even finding that a district court erred in its Rule 56.1 findings, whether under facts similar to this case or any other facts. VitalGo's arguments that somehow the summary judgment record, the Rule 56.1 record, had inconsistencies within it or had evidence within it that the judge should have relied on in denying a summary judgment for Craig or in making a ruling other than what it did are incorrect. First, VitalGo talks about the June 6th, 2011 email and I think it's very important to remember when looking at this email, that this was an email responding to VitalGo's June 2nd communication, prematurely terminating the agreement and communicating to Craig Therapeutics that despite all their efforts and their ongoing business that they were developing with these totalists beds, that they wouldn't be getting any more beds from VitalGo going forward. And then the June 6th, 2011 email says, okay, well, we disagree that you're allowed to terminate the agreement, but let's try to work it out and we'll see what we can agree to commit to going forward. Taken in the context of it being a response to VitalGo's repudiation of the agreement, it certainly doesn't raise an inference that the December 2010 oral conversation that Craig Therapeutics put in the record never took place. The only evidence that was in the summary judgment record about that conversation was Craig Therapeutics' Rule 56.1 statement supported by sworn deposition testimony. VitalGo could, as I believe opposing counsel conceded, VitalGo could easily have put evidence in the summary judgment record contesting that conversation, but it didn't do so. Then VitalGo next turns to Craig Therapeutics' response to an interrogatory. And I just want to spend a little time on that because I think that interrogatory response is mischaracterized in VitalGo's papers. Let me just turn to it. The interrogatory question that VitalGo asks is, according to Craig, the total beds committed to purchase are set forth in emails sent from Craig Poulos to Paz on June 13, 2011 and June 27, 2011. And if I heard correctly, I understood my opponent to say that Craig Therapeutics agreed to that statement somehow. But actually, Craig's answer to that statement is contested. That's a direct quote. We contest that that statement is true, and then the response goes on to say that the commitments are reflected in all of the pleadings, and then it goes on to say investigation continues. And I think it's also important to note that, and this is in the same document, docket 88, when Craig responded to another paragraph of VitalGo's Rule 56.1 statement, paragraph 9, Craig Therapeutics rehashes the December 2010 oral conversation and expressly said, no, this is where we're saying the commitment happened. It happened during this conversation, which is entirely consistent with Craig's own Rule 56.1 statement. And then finally, the TRO record that VitalGo refers to as a basis on which the district court should have made a different ruling. First, VitalGo never made this argument below, and so as the appellant, that argument is waived. And as this court noted, the district court wasn't required to comb through the earlier record and find materials on which it could find in VitalGo's favor. And also, Craig's argument at the TRO stage was really a legal argument. It was an interpretation of the agreement that it didn't believe any commitments needed to be made. The court did not agree with that legal argument, but that's really very different than putting forth evidence that somehow contradicts the December 2010 oral conversation that later became the focus of the summary judgment pleadings. Okay, you'll have to start wrapping up. Oh, okay. Just to say quickly that... Oh, I'm sorry, I see the red light. Just to say quickly that the court's rulings in the case were correct and the judgment should be affirmed. Thank you. Thank you. Any time left? You have 19 seconds, Mr. Lucas. I'll put two minutes on the clock and be a generous referee. I'll be very brief. I'm going to just quickly touch on the written notice requirement and this discussion about this minor exception on actual notice. It's very clear from the record that actual notice was disputed. I'm reading from the district court's opinion, Docket 93-20. Vital Goal points to the equivocal language of the June 6 email and asserts it is clear from these writings that, in fact, there has never been any commitment. So we would say that that also shows up in the 7922 email at Docket 78. Excuse me, Vital Goal 78. And then finally, I really quickly wanted to touch on the discussion we had about 56G. The point was that the appellee moved on its entire claim and has the burden of production on its entire claim and it raised no evidence whatsoever of damages, such that the burden never switched to the other side to rebut anything because it couldn't show it met its burden on the entire claim. And I just want to cite from a couple of cases from this court, Johnson v. Goodmanson, 35F3-1104-1112. Even an unanswered motion for summary judgment cannot be granted unless the movement has shown that the facts warrant judgment in its favor. But that says that summary judgment can't be granted. It doesn't say Rule 56G can't be entered. Well, it goes to the point that he couldn't, he should not have entered any purported 56G bindings on any elements of the entire claim because they moved on the entire claim and they had to show that each element of the claim before the burden switched. They have to, in order for summary judgment to be granted, they have to show that. Exactly, but what happened, I think it goes to the point that you could just rebut, because it was the whole claim, you could just rebut one element and that would be enough such that summary judgment couldn't be granted. One other case, Johnson v. Hicks-Recker, 651F3-658-662. The non-movement has no obligation to respond to a motion for summary judgment where the movement fails to meet its initial burden of production. So the bottom line is the purported Rule 56G findings were wrong. It only applies if a penalty met its initial burden on its entire claim because it moved on its entire claim. Because the Rule 56 is very clear, you do not have to respond to every element of a claim. You can just show that one element is not met. That's why we believe the district court's alleged Rule 56G findings were wrong. Clear error, and then later on in the second summary judgment, he compounded that error, obviously, by not allowing evidence to be taken on the other elements. All right, you're over time. Thank you very much. Thank you. Thanks for all counsel. The case is taken under advisement.